IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ERNESTO GONZALEZ SILVA,           )
                                  )
            Plaintiff,            )
                                  )
      v.                          )    1:07CV756
                                  )
SHERIFF'S OFFICE OF SURRY COUNTY, )
                                  )
            Defendant.            )

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE**

Plaintiff, a prisoner of the State of North Carolina, seeks relief pursuant to 42 U.S.C. § 1983, claiming that Defendant was deliberately indifferent to his serious medical needs. Specifically, Plaintiff claims that Defendant did not adequately treat his alleged stomach, shoulder, head, and neck injuries in violation of N.C.G.S. §§ 148-19(a), 148-22.2, 153A-225(a)(1), and 162-55.[1]

The facts of the case are as follows. Plaintiff arrived at the Surry County Detention Center ("Surry County") on or about October 28, 2004.[2] A private prisoner transport company, Wackenhut Transport and Extradition Unit ("Wackenhut"), provided his transportation to Surry County from Texas. According to Plaintiff, the transport van swerved at some point during the journey to avoid

---

[1]These state law claims have been collectively construed as a claim for relief under 42 U.S.C. § 1983.

[2]Plaintiff alleges that he arrived at Surry County on October 30, 2004. (Compl. ¶ 8.) However, he submitted his first medical request at Surry County on October 29, 2004, placing his arrival at a slightly earlier date.

a collision, causing Plaintiff to be "thrown from one side of the van to the other, hitting his head, shoulder, neck, and stomach." (Complaint ¶ 4.)  However, Plaintiff certified that he did not require any medical treatment upon his arrival in Surry County.[3]  In addition, Plaintiff's medical screening upon booking reveals that he answered "no" when asked if he had "obvious pain, bleeding or other symptoms that would require emergency care."  He also answered "no" when asked if he had "any other problems that the jail staff should be aware of."  In accordance with these responses, Plaintiff received no medical care at that time.

The next day, October 29, 2004, Plaintiff submitted his first medical request, complaining of a toothache, trouble sleeping, sweating, nervousness, and a problem with his left knee.  Contrary to his responses upon booking, he indicated that these problems had been present for 65 days.  On November 1, 2004, Plaintiff was evaluated by Nurse Devine and prescribed ibuprofen and Benedryl per Dr. Gwendolyn Bolling.  There is no indication that Plaintiff mentioned an incident during transport or any resulting injuries to jail staff in either his October 29th request for treatment or at his November 1st appointment.  In fact, the first mention of these injuries came over a week later, on November 9, 2004, when Plaintiff filed his second medical request.  At that time, Plaintiff complained of breathing trouble and stomach pain resulting from "[h]itting the bus very hard" during his transport

---

[3]Upon booking, all new inmates at the Detention Center are required to state whether they need any medical treatment.

from Texas. Nurse Devine assessed Plaintiff the same day and instructed him to place ice on his shoulder twice daily for seven days. She also noted in Plaintiff's records that he had not mentioned these preexisting problems on November 1st.

Following the November 9th appointment, Plaintiff's complaints of shoulder problems arose regularly. Nurse Devine assessed him on four additional occasions in November 2004, three times in December 2004, and twice in January 2005. Plaintiff's shoulder complaints were also addressed by Physician's Assistant Betty McGurk on November 16, 2004, March 29, 2005, and April 5, 2005. Plaintiff continued to take ibuprofen during this time, and at least once reported to McGurk that the medication was helping. McGurk found no shoulder tenderness or deformities when examining Plaintiff's shoulder and found that Plaintiff maintained a full range of motion. Nevertheless, at Plaintiff's initial appointment on November 16th, McGurk prescribed Flexeril to better control Plaintiff's alleged pain and stated that she would order an x-ray of the shoulder if the van accident could be verified. Plaintiff ultimately did undergo a shoulder x-ray, despite Wackenhut's denial of any incident during transport. McGurk, Dr. Bolling, and a radiologist from Forsyth Radiological Associates reviewed the x-ray and found that it was negative.

Plaintiff remained at the Surry County Detention Center until November 21, 2005, when he was placed in the custody of the North

-3-

Carolina Department of Correction.[4] During his time at Surry County, Plaintiff never filed any grievance, despite the availability of grievance procedures. In fact, his Complaint indicates that he first filed a grievance relating to the alleged van accident and resulting medical treatment on December 31, 2006, more than a year after he left the facility in question, and more than two years after the alleged transportation incident. He also alleges that Surry County medical staff failed to treat a bleeding, infected abscess on his left shoulder (Compl. ¶ 12), and that he received no medical attention despite filing multiple requests (Compl. ¶ 15). Elsewhere in the Complaint, however, Plaintiff admits that he received ibuprofen, although "without a specific medical examination," (Compl. ¶ 10), and that he was taken for an x-ray five months after this arrival at Surry County, (Compl. ¶ 11). The remainder of Plaintiff's Complaint details myriad ongoing medical problems including not only shoulder problems, but also high blood pressure, failing eyesight, diarrhea, leg pain, an abdominal abscess, and headaches, all of which he claims were inadequately addressed both by Surry County and subsequent prisons. Thus, Plaintiff seeks relief under multiple state statutes relating to prisoner medical care. As stated above, these allegations are collectively construed as claims under 42 U.S.C. § 1983, and Defendant now moves for summary judgment. While Plaintiff has filed what is captioned as his own summary judgment motion, this

---

[4]Plaintiff was housed at Surry County while awaiting trial.

-4-

document (docket no. 22) is, in fact, his brief in opposition to Defendant's motion.[5]

## Summary Judgment Standards

When confronted with a motion for summary judgment by a defendant, a plaintiff must make a sufficient showing with respect to each essential element of his case for which he bears a burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). He may not rely on mere allegations in his pleadings, but must set forth specific facts within his personal knowledge. Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976). This response must be based on more than mere allegations of error or the falsity of Defendant's affidavits. Bloodgood v. Garraghty, 783 F.2d 470, 475 (4th Cir. 1986). Plaintiff must show that there are issues of genuine material fact and he must produce evidence to support his contentions. A mere scintilla of evidence is not sufficient. Rather, there must be enough evidence for a jury to render a verdict in his favor. Sibley v. Lutheran Hosp. of Maryland, Inc., 871 F.2d 479, 483 (4th Cir. 1989).

## Discussion

Defendant's argument in favor of summary judgment is threefold. First, Defendant argues that Plaintiff's allegations are not sufficient to show that it was deliberately indifferent to Plaintiff's medical needs and that, even if it were, Plaintiff suffered no substantial injury as a result. Second, Defendant

---

[5]As Defendant correctly argues, Plaintiff's filing is untimely regardless of its caption or purpose.

-5-

claims that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), before filing the present lawsuit. Third and finally, Defendant argues that it is entitled to governmental immunity. The Court will address each of these arguments in turn.

In order for Plaintiff to succeed on his claim alleging a lack of medical care, he must show that Defendant was deliberately indifferent to a serious medical need. Mere negligence or malpractice is not enough. Estelle v. Gamble, 429 U.S. 97, 106 (1976). To meet this standard, Plaintiff must show that the treatment was grossly incompetent or inadequate to the extent that it shocks the conscience and seems fundamentally unfair. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Deliberate indifference is manifested by actual intent or reckless disregard of substantial risks of danger. Id. Such indifference is akin to criminal law recklessness--not mere disregard of a great risk, but a conscious disregard constituting a gross deviation from the standard of care. Id. at 105; Devitt, Blackmar, Wolff and O'Malley, Federal Jury Practice and Instructions § 17.01 (2008).

In evaluating a medical care case, the Court may rely on medical records to assess whether an evidentiary hearing is required, Blanks v. Cunningham, 409 F.2d 220, 221 (4th Cir. 1969), and to determine whether the injury is in fact serious, West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978). Intake examinations, complaints made, treatment given and its timeliness, physicians' evaluations, and subsequent evaluations also constitute relevant

evidence in disputes involving medical care.  Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993).  In addition, the Court may rely on the affidavits of medical personnel and the medical records to determine whether Defendant's efforts were reasonable.  Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd without opinion, 676 F.2d 690 (4th Cir. 1982).  When the affidavits show that Plaintiff was under constant medical supervision, he likely is not entitled to relief since medical judgments are not normally subject to review.  Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975).

Here, Defendant chiefly contends that, "even if the medical needs Plaintiff alleges qualify as 'serious,' he offers no evidence which shows that the Surry County Sheriff's Office medical staff ignored those needs." (Docket No. 17, p. 10.)  This Court agrees.  At each step, the medical records demonstrate that Plaintiff's caregivers went beyond minimal care, and at many times well beyond what was demonstrably medically necessary, to make Plaintiff comfortable and satisfied with his treatment.  Within five months of his arrival at Surry County, Plaintiff was assessed and treated on at least 14 separate occasions for his complaints of shoulder pain.  In fact, within just a month at the facility, Surry County medical staff responded to no less than six medical requests by Plaintiff.  At these appointments, no medical professional found any apparent injury or any loss of motion in Plaintiff's shoulder.  They also were unable to confirm Plaintiff's story regarding the origins of his alleged injury.  The only evidence of injury was Plaintiff's subjective report of pain.  Nevertheless, Physician's

-7-

Case 1:07-cv-00756-JAB-DPD   Document 24   Filed 06/11/09   Page 7 of 9

Assistant McGurk and Dr. Bolling prescribed two pain medications, continued to see and treat Plaintiff on a regular basis, and eventually ordered x-rays of his shoulder. Plaintiff's frequent medical evaluations appear to stop only after the x-rays revealed no injury.

In short, the medical records and accompanying affidavits in this case belie Plaintiff's claims that his requests for medical attention were repeatedly ignored and that he was never given a complete examination. Because (1) there is no evidence, other than Plaintiff's unsupported allegations, that Plaintiff's shoulder injury or other injuries from the alleged transport incident were serious, and (2) there is ample evidence that Plaintiff was under constant medical supervision for his complaints while housed at Surry County, Plaintiff has not shown that Defendant was deliberately indifferent to a serious medical need, and his claims must be dismissed.

Although it is not necessary for the Court to reach Defendant's remaining two bases for summary judgment, the first provides an additional ground for dismissal and merits brief discussion. Under the PLRA, prisoners must exhaust "such administrative remedies as are available" before filing suit in federal court. 42 U.S.C. § 1997e(a). This ensures that prison officials are first given an opportunity to address the claims against them before being haled into federal court. Woodford v. Ngo, 548 U.S. 81, 89 (4th Cir. 2006). Here, Defendant was never informed of Plaintiff's claims prior to the filing of the present

case.  As mentioned previously, Plaintiff did not utilize the grievance procedures available at Surry County.  Instead, he filed his sole grievance with the Lumberton Correctional Institution, a NCDOC facility, more than a year after he left Surry County.  This action did nothing to place Defendant on notice of the claims against it and serves as an additional, procedural basis for dismissal.

**IT IS THEREFORE RECOMMENDED** that Defendant's motion for summary judgment (docket no. 16) be granted, and that Judgment be entered dismissing this action.

/s/ Donald P. Dietrich
**Donald P. Dietrich**
**United States Magistrate Judge**

June 11, 2009